IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | CRIMINAL NO.  05-00064-WS |
| ) | |
| DENNIS ROBIN RAY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter is before the Court on the defendant's motion to suppress.  (Doc. 45).  The parties have filed briefs in support of their respective positions, (Docs. 45, 52, 57), and the motion is ripe for resolution.  After carefully considering the foregoing materials, as well as all other relevant materials in the file, the Court concludes that the motion to suppress is due to be denied.

The defendant's residence was searched, and certain evidence seized, pursuant to a search warrant that issued on January 29, 2002.  (Doc. 47, Exhibit B).  The search warrant was based on the affidavit of Donnie Payne, a Bay Minette police officer.  (Doc. 45, Exhibit 1).  The defendant argues that the affidavit failed to support probable cause because the information contained therein was stale and because the reliability and veracity of the information was not established by corroboration or otherwise.  (Doc. 45 at 2).

For present purposes, the salient portions of Officer Payne's affidavit are as follows:

- On August 24, 2001, he was called to a traffic stop involving the defendant, at which time he observed in the defendant's vehicle substantial quantities of two items used in the manufacture of methamphetamine.

- On August 25, 2001, an anonymous informant told Officer Payne that he had previously lived at the defendant's residence and had observed the defendant manufacture methamphetamine there.

- On October 18, 2001, Officer Payne and another officer appeared at the defendant's residence.  The defendant refused admittance, stating that he was concerned the officers would find items that would cause him problems in reference to his prior felony

conviction.

- On November 15, 2001, an unnamed individual reported to a sheriff's investigator that the defendant was operating a meth lab.

- On January 17, 2002, an unnamed individual reported to a sheriff's deputy that, in early January 2002, he had seen a meth lab in the defendant's residence.

- On January 21, 2002, an anonymous individual reported to a sheriff's deputy that the defendant was producing methamphetamine at his residence and that he had smelled the odor of the lab from the front door of the residence.

- On January 25, 2002, an unnamed individual reported to a sheriff's deputy that a relative was living at the defendant's residence and had reported that marijuana and other illegal drugs were in use at the residence and that the defendant had stated he could hide or destroy them if law enforcement officials arrived.

(Doc. 45, Exhibit A).

**A. Staleness.**

"There is no particular rule or time limit for when information becomes stale." *United States v. Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000). "In this case-by-case determination we may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994). By "habits of the accused" is meant "nomadic" versus "entrenched"; by "character of the items sought" is meant "perishable" or "of enduring quality"; and by "nature and function of the premises to be searched" is meant "mere criminal forum" or "secure operational base." *United States v. Bucuvalas*, 970 F.2d 937, 940 (1st Cir. 1992)(internal quotes omitted), *abrogated on other grounds, Cleveland v. United States*, 531 U.S. 12 (2000).[1]

Especially relevant to the present case is that "[t]he basic criterion as to the duration of

---

[1] This portion of *Bucuvalas* was cited with approval in *Harris*. 20 F.3d at 450.

probable cause [or staleness] is the inherent nature of the crime," and "drug trafficking activities ... are inherently protracted and continuous." *United States v. Magluta*, 198 F.3d 1265, 1272 (11th Cir. 1999)(internal quotes omitted)(bracketed material in original); *cf. United States v. Hooshmand*, 931 F.2d 725, 735-36 (11th Cir. 1991)(evidence of fraudulent conduct extending over a seven-year period was not rendered stale by the passage of eleven months).  Here, in a case involving drug trafficking, the most remote relevant evidence predates the search by barely five months.

Moreover, the affidavit reflected that the defendant had lived at the same residence since at least 1997 and that he had engaged in methamphetamine manufacture there since at least August 2001. This information established that the defendant was "entrenched" and that he utilized his residence as a "secure operational base."  Under the Harris factors, the information in the affidavit was not stale.

At any rate, even when certain information becomes stale, "such information is not fatal where the government's affidavit updates, substantiates, or corroborates the stale material." *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000)(internal quotes omitted).  Even if the information from August - November 2001 could, on its own, be considered stale, it was updated, substantiated and corroborated by three separate informants in January 2002, the same month the search warrant was obtained and executed.

In short, the information in the affidavit is not fatally stale.

### B.  Adequacy of the Information.

Probable cause is measured under a "totality-of-the-circumstances analysis." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  This standard requires a "practical, common-sense decision," *id*. at 238, not blind adherence to neat pigeonholes or absolute requirements.

#### 1.  Personal knowledge of Officer Payne.

In August 2001, Officer Payne personally observed substantial quantities of items used in the manufacture of methamphetamine in the defendant's vehicle, along with the defendant.  The defendant

does not deny that this episode occurred, that the materials were observed, or that they are consistent with little else but methamphetamine production. Indeed, his only objection is the illegitimate one of staleness. (Doc. 45 at 3).

In October 2001, Officer Payne appeared at the defendant's residence and attempted a "knock and talk" investigation.[2] The defendant declined to cooperate, saying "he was concerned we would find items that would cause him problems in reference to his prior felony conviction." Officer Payne suspected that the defendant's statement referred to the presence of weapons or drugs within the residence. The defendant does not deny that he made the statement. Instead, he complains that Officer Payne's "feelings and hunches" are irrelevant, (Doc. 45 at 4; Doc. 57 at 3), but he is unable to suggest an innocent "item" to which his statement could have referred. The defendant's statement did in fact suggest the presence of contraband on the premises, and it was perfectly appropriate for Officer Payne to rely on this statement in his affidavit. *See, e.g., United States v. Cross*, 928 F.2d 1030, 1041 (11th Cir. 1991)(the defendant's statements in a letter to an undercover officer could be relied upon in showing probable cause).[3]

### 2. Information from other sources.

It may be assumed for present purposes that Officer Payne's personal knowledge did not, of itself, support probable cause to search the defendant's residence. His affidavit, however, rests also on statements from five informants, all of whom advised that the defendant was manufacturing, distributing

---

[2]"Courts have defined [knock and talk] as a noncustodial procedure [in which] the officer identifies himself and asks to talk to the home occupant and then eventually requests permission to search the residence." *United States v. Chambers*, 395 F.3d 563, 567 n.2 (6th Cir. 2005) (internal quotes omitted)(bracketed material in original). The defendant does not challenge the lawfulness of the knock-and-talk technique. *See, e.g., United States v. Gould*, 364 F.3d 578, 590 (5th Cir. 2004)("We note that a 'knock and talk' police investigatory practice has clearly been recognized as legitimate.").

[3]While the defendant correctly notes that a citizen has no obligation to allow a warrantless search of his residence, (Doc. 57 at 3), the salient point here is not the defendant's refusal to allow a search but the content of his statements in the course of refusal.

and/or using methamphetamine. At least three of these informants spoke from personal knowledge, while a fourth related information from a relative living at the defendant's residence.[4]

The defendant, faced with this rather formidable collection of accusers, attempts valiantly to avoid their devastating impact. First, he trivializes the informants as anonymous, (Doc. 45 at 5; Doc. 57 at 4), but this in fact describes only two of the five.[5] Nor does anonymity of itself justify ignoring tips; on the contrary, the *Gates* Court embraced the totality-of-the-circumstances test in part because a more rigid standard would "leav[e] virtually no place for anonymous citizen informants." 462 U.S. at 238. Thus, information from anonymous informants is to be measured within the same totality-of-the-circumstances framework applicable generally. *Id*.

The defendant next challenges the "reliability, veracity and credibility" of the informants, (Doc. 45 at 3), as well as the "basis of knowledge" of some of them. (*Id*. at 4-5). Under the prevailing standard, none of these attributes is an independently essential requirement of probable cause; rather, each is a "relevant consideratio[n] in the totality-of-the-circumstances analysis," and "a deficiency in one may be compensated for ... by a strong showing as to the other, or by some other indicia of reliability." *Illinois v. Gates*, 462 U.S. at 233.

Even measured against the factors urged by the defendant, the information provided by an unnamed individual on January 17, 2002, standing alone, strongly supports probable cause. This individual was known by the officer to whom he reported, and his statement was based on his personal observation of a meth lab inside the defendant's residence, which is the strongest possible "basis of knowledge." Moreover, the individual had provided information in another case that had been shown to be accurate, thereby bolstering his reliability in the traditional manner.[6] This information, combined

---

[4]The defendant's characterization of these reports as nothing more than "unsubstantiated rumor," (Doc. 45 at 4), is patently incorrect.

[5]That Officer Payne did not know the names of the individuals does not suggest that the officers to whom the individuals spoke did not know their names.

[6]The defendant's suggestion that this individual merely identified herself correctly as a victim of a crime, (Doc. 45 at 4), is simply wrong.

with the personal knowledge possessed by Officer Payne, of itself satisfied the probable cause requirement.

But Officer Payne had much more to go on. On August 25, 2001 and January 21, 2002, two other individuals separately reported to law enforcement authorities that, based on their personal observations, the defendant was engaged in methamphetamine production at his residence. These individuals were anonymous but, as noted above, their tips cannot be disregarded on that account alone. The defendant correctly points out that these individuals had no track record of providing accurate information, but there were "other indicia of reliability." As the defendant himself notes, (Doc. 45 at 3), "[c]orroboration through other sources of information reduce[s] the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." *Illinois v. Gates*, 462 U.S. at 244-45. The very fact that five different individuals separately came forward to inform law enforcement officers of the defendant's alleged activities reflects a level of corroboration difficult to surpass, as it is almost beyond imagination that five persons would separately relate the same false information. *See United States v. Scalia*, 993 F.2d 984, 988 (1st Cir. 1993)(a first-time confidential informant's tip was corroborated by " informal complaints ... by eight unidentified citizens expressing concerns about [the defendant's] drug trafficking activity")(cited with approval in *United States v. Foree*, 43 F.3d 1572, 1576 (11th Cir. 1995)).

Finally, the defendant argues that probable cause must be lacking because neither Officer Payne nor any other law enforcement official attempted to independently corroborate the informants' statements by surveillance, a controlled buy or other means. (Doc. 57 at 3-4). Because, as noted above, the informants' statements served to corroborate each other and were further corroborated by Officer Payne's personal knowledge, the failure to further corroborate is immaterial. To the extent the defendant suggests that Officer Payne did not subjectively believe that probable cause existed, "[p]robable cause issues are to be decided on an objective basis by courts without regard to the subjective beliefs of law enforcement officers, whatever those beliefs may have been." *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997)(en banc).

"[T]he traditional standard for review of an issuing magistrate's probable-cause determination

has been that so long as the magistrate had a substantial basis for ... conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, 462 U.S. at 236.  Applying the totality-of-the-circumstances test required by the Supreme Court, that standard is satisfied here.

For the reasons set forth above, the defendant's motion to suppress is **denied**.

DONE and ORDERED this 20th day of April, 2005.

                                                  s/ WILLIAM H. STEELE
                                                  UNITED STATES DISTRICT JUDGE